***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award except with minor modifications of the findings of fact.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Interstate Insurance Service Group is the carrier on risk.
4. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on May 4, 1998.
5. This claim was accepted as compensable with the filing of a Form 60. As indicated on the Form 60 plaintiff's average weekly wage was $320.00 yielding a compensation rate of $213.35. There has been no subsequent denial of this case.
6. Defendants paid plaintiff compensation for total disability as a result of his injury at a rate of $213.35 from May 4, 1998 through November 16, 1998 and August 17, 1999 continuing to the present.
7. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1.
8. Industrial Commission Forms and filings were stipulated into evidence as Stipulated Exhibit 2.
9. The issue before the Commission is whether plaintiff's compensation should be terminated or suspended as a result of his failure to comply with medical treatment and vocational rehabilitation.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. Plaintiff suffered a compensable injury by accident on May 4, 1998 when a block fell and severely cut his left arm.
2. Plaintiff was treated immediately following the accident at UNC Hospitals emergency room. Plaintiff's initial x-rays were normal and his left forearm was sutured.
3. On May 18, 1998, plaintiff's left forearm sutures were removed and he was referred to the hand clinic due to complaints of left hand weakness.
4. On May 20, 1998, UNC Hospitals physician, Dr. Anagnos, began treating plaintiff for left hand weakness. Plaintiff also complained of numbness and tingling in his left arm, and Dr. Anagnos diagnosed plaintiff with a probable radial nerve contusion.
5. On June 17, 1998, plaintiff was improving but still had tenderness in the dorsal part of his left hand. Dr. Anagnos recommended local treatment and felt that surgery was not needed.
6. In August 1998, a nerve conduction study was recommended and following that study surgery was performed to repair a nerve in plaintiff's left hand.
7. Following the surgery, plaintiff was to wear a splint and return to work at full duty on October 12, 1998.
8. On November 2, 1998, plaintiff was complaining of persistent pain and Dr. Anagnos recommended light duty work with the restriction of no lifting over two (2) pounds.
9. On February 22, 1999, plaintiff's hand had improved and there was less sensitivity. Dr. Anagnos recommended plaintiff return to light duty work with the restrictions of avoiding dangerous activity and power tools and lifting no more than five (5) pounds.
10. On March 24, 1999, plaintiff was referred to Dr. Edwards for a second opinion evaluation. Dr. Edwards diagnosed plaintiff with a contusion of the superficial radial nerve of his left forearm with residual dysesthesia. Dr. Edwards indicated plaintiff was a candidate for a superficial radial nerve neuroma excision and translocation of the SRN stump.
11. On May 3, 1999, plaintiff began complaining of left shoulder and neck pain as well as pain in the right side of his body. Dr. Anagnos stated plaintiff used his left extremity in conversation and showed no signs of guarding.
12. On August 17, 1999, plaintiff underwent surgery with a neuroma transportation of the left superficial nerve.
13. On August 30, 1999, plaintiff began physical therapy including range of motion exercises and desensitization activities as well as scar massages. Plaintiff's therapy continued through September 1999 and he was discharged from therapy in October 1999.
14. On October 21, 1999, Dr. Edwards noted plaintiff was still having pain in his arm but there were no vasomotor changes or stiffness suggesting reflex sympathic disorder (RSD). Dr. Edwards determined at the completion of his examination that plaintiff could return to light duty work with restrictions of no lifting greater than fifteen (15) pounds with both hands and ten (10) pounds with the left hand. At this time, Dr. Edwards also indicated plaintiff was at maximum medical improvement and gave him a nine (9%) permanent partial disability rating.
15. Defendants filed a Motion to Compel plaintiff to cooperate with vocational rehabilitation prior to the deputy commissioner hearing. Plaintiff had failed to attend any of the appointments with potential employers indicating that he was still having significant pain.
16. At the deputy commissioner hearing, plaintiff indicated he needed additional medical treatment in order to be able to proceed with vocational rehabilitation.
17. The deputy commissioner then ordered defendants to send plaintiff to Mitchell Freedman, M.D. to determine plaintiff's current medical condition and ordered plaintiff to comply with vocational rehabilitation. Dr. Freedman saw plaintiff on October 30, 2000 and recommended an MRI of plaintiff's head and cervical core. The MRI was normal and Dr. Freedman prescribed Neurontin.
18. On December 15, 2000, an examination was scheduled with Dr. Freedman to evaluate plaintiff's work status. Plaintiff refused transportation to this examination.
19. Another appointment was scheduled on December 20, 2000 and again, plaintiff refused to return to see Dr. Freedman.
20. Defendants subsequently filed a Motion to Compel plaintiff to cooperate with medical treatment which was granted in February 2000.
21. Defendants scheduled another appointment with Dr. Freedman on March 14, 2001 and provided transportation to this appointment. Again, plaintiff refused to attend this appointment.
22. Plaintiff has indicated he has substantial pain and is unable to proceed with vocational rehabilitation because of this pain. Plaintiff had questioned the second opinion of Dr. Edwards and requested additional medical treatment in order to be able to determine whether he was able to proceed with vocational rehabilitation.
23. The deputy commissioner granted plaintiff's request for additional medical treatment in order to be able to ascertain plaintiff's current condition and whether additional medical treatment was necessary.
24. Plaintiff has indicated that he does not trust Dr. Freedman because Dr. Freedman is not able to give him an absolute guarantee concerning prescribed medical treatment.
25. Mitchell Freedman, M.D., Raleigh Neurology Associates, is a respected neurologist and there is no evidence that Dr. Freedman has in any way been prejudiced or acted in bad faith. Plaintiff was referred to Dr. Freedman by the deputy commissioner and not by the employer or carrier.
26. Plaintiff has willfully failed to comply with the Orders issued in this case to comply with medical treatment.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On May 4, 1998, plaintiff sustained a compensable injury by accident to his left arm. N.C.G.S. § 97-2(6).
2. Plaintiff has received medical treatment from Damon P. Anagnos, M.D., George S. Edwards, M.D., and Mitchell Freedman, M.D., as a result of his compensable injury by accident. N.C.G.S. § 97-25.
3. Plaintiff had been ordered to comply with the recommended treatment as indicated by Dr. Freedman by the deputy commissioner on February 2, 2001. N.C.G.S. § 97-25.
4. Plaintiff has willfully failed to comply with medical treatment in this case. Plaintiff's compensation should be suspended effective March 14, 2001 and shall remain suspended until plaintiff has complied with medical treatment in this case. N.C.G.S. § 97-25; N.C.G.S. §97-18.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following
 ORDER
1. Plaintiff's compensation shall be suspended beginning March 14, 2001 and continuing until such time as he has complied with the prescribed medical treatment in this case.
2. Each side shall bear its own costs.
This the ___ day of March 2002.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER